**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| IOT INNOVATIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>ANKER INNOVATIONS TECHNOLOGY CO., LTD., and ANKER INNOVATIONS LTD. (d/b/a "eufy")<br><br>Defendants. | Civil Action No. 2:26-cv-00758<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this Complaint against Anker Innovations Technology Co., Ltd., ("AITC") and Anker Innovations Ltd., (d/b/a "Eufy") ("Anker Innovations") (collectively "Anker" or "Defendants"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendants' infringement of the following United States Patents (the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are available, respectively, at the links below:

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| A. | 7,209,876 | System and Method for Automated Answering of Natural Language Questions and Queries | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7209876 |
| B. | 7,346,340 | Provision of User Policy to Terminal | USPTO.gov, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7346340 |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| C. | 7,593,428 | Apparatus, and Associated Method for Forming, and Operating Upon, Multiple-Checksum-Protected Data Packet | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593428 |
| D. | 7,974,260 | Method of Transmitting Time-Critical Scheduling Information Between Single Network Devices In A Wireless Network Using Slotted Point-To-Point Links | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7974260 |
| E. | 8,972,576 | Establishing A Home Relationship Between a Wireless Device and a Server in A Wireless Network | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8972576 |
| F. | 9,008,055 | Automatic Remote Services Provided By A Home Relationship Between A Device And A Server | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9008055 |

2. IoT Innovations seeks injunctive relief and monetary damages.

**PARTIES**

3. IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4. On information and belief, Defendant Anker Innovations Technology Co., Ltd. is a corporation organized under the laws of the People's Republic of China, with a principal place of business located at Room 701, Building 7, Zhongdian Software Park, No. 39 Jianshan Road, HIGH-TECH Zone, Changsha City, Hunan, People's Republic of China.

5. On information and belief, Defendant Anker Innovations Ltd. is a corporation organized under the laws of Hong Kong SAR, People's Republic of China, with a principal place of business located at Room 1318-19, Hollywood Plaza, 610 Nathan Road, Mongkok, Kowloon,

Hong Kong SAR, People's Republic of China.

6. On information and belief, Anker sells, offers for sale, manufactures, uses, or imports products into the United States under the brand name "eufy." For example, the eufy website identifies eufy as one of Anker Innovations' "5 key brands." *See* https://www.eufy.com/about?ref=footer.

7. Anker is part of the corporate structure and distribution chain for making, importing, offering to sell, selling, and distributing the Accused Products in the United States, either directly or through their subsidiaries Fantasia Trading, LLC d/b/a AnkerDirect and/or Power Mobile Life, LLC or authorized dealers.

8. On information and belief, as further explained herein, Anker as a principal also directs its agents (e.g., subsidiaries such as Fantasia Trading, LLC d/b/a AnkerDirect and/or Power Mobile Life, LLC) to make, use, sell, offer to sell, and/or import the Accused Products in or into the United States, thereby committing infringing acts under 35 U.S.C. § 271(a).

9. On information and belief, as further explained herein, Anker should be held liable for the infringing acts of their subsidiaries under 35 U.S.C. § 271(a) as an alter ego because Anker and its subsidiaries (e.g., Fantasia Trading, LLC d/b/a AnkerDirect and/or Power Mobile Life, LLC) have such unity of interest, ownership, and/or control that the separate personalities of the corporation and its subsidiaries no longer exist and that an inequitable result will follow if the acts giving rise to infringement are treated as those of Anker alone.

10. Anker also induces its subsidiaries, sister companies, affiliates, partners, authorized dealers such as Amazon, and/or customers to make, use, sell, offer to sell, and/or import Accused Products in the United States, including in the state of Texas and this District, thereby committing infringing acts under 35 U.S.C. § 271(b).

11. As principals directing their agents (e.g., subsidiaries and/or sister companies) and as alter egos of their subsidiaries and/or sister companies, Anker should be held liable for the infringing acts of their subsidiaries under 35 U.S.C. § 271(c).

12. Anker and their subsidiaries operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein.

**JURISDICTION AND VENUE**

13. IoT Innovations repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

14. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

15. Venue is proper in this District as to Defendants. Anker Innovations Technology Co., Ltd. is organized under the laws of the People's Republic of China, and Anker Innovations Ltd. is organized under the laws of Hong Kong SAR, People's Republic of China. 28 U.S.C. § 1391(c)(3) provides that "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."

16. Defendants are subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendants' substantial business in this judicial district, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

17. Specifically, Defendants intend to do and do business in, have committed acts of

infringement in this District, in this State of Texas, and in the United States, directly or through intermediaries, and offer their products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

18. Defendants have purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Defendants regularly sell (either directly or indirectly), their products within this District. For example, Defendants have placed and continue to place the Accused Products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this District and the State of Texas. Defendants are subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to their substantial and pervasive business in this State and District, including their infringing activities alleged herein, from which Defendants derive substantial revenue from goods sold to Texas residents and consumers.

19. Upon information and belief, Defendants ship and cause to be shipped into the District infringing products and materials instructing their customers to perform infringing activities, to their employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

20. Defendants market, sell, and deliver Accused Products in this District, and have committed acts of infringement in this District.

21. Defendants commit acts of infringement from this District, including, but not limited to, use of the Accused Products in an infringing manner.

22. Defendants have committed acts of direct patent infringement within Texas, and

elsewhere within the United States, giving rise to this action and/or have established minimum contacts with Texas such that personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

23. Defendants commit acts of infringement from this District, including, but not limited to, importing, selling, offering for sale, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

24. In addition, or in the alternative, this Court has personal jurisdiction over Anker pursuant to Fed. R. Civ. P. 4(k)(2).

## THE ACCUSED PRODUCTS

25. IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

26. Based upon public information, Defendants own, operate, and/or control the website and domain https://www.eufy.com, through which they advertise, sell, offer to sell, provide and/or educate customers about their products and services.

27. Defendants make, use, cause to be used, sell, offer for sale, provide, supply, and/or distribute their AI-powered customer support solutions (including the eufy Smart Home Support – AI Agent (powered by Solvea)); their smart home security ecosystem solutions (including the eufy Security App, HomeBase S380 (HomeBase 3), HomeBase Professional S1, eufy Entry Sensor E20, Water and Freeze Sensor, Flood and Freeze Sensor, Entry Sensor, Smoke Alarm E10, Motion Sensor, Panic Button E10, KeyPad E10, Indoor Siren E20, and Key Fob E10); their security camera solutions (including the eufy Wall Light Cam S4, SoloCam S340, SoloCam S220, Indoor Cam S350, Indoor Cam E30, Indoor Cam E220, 4G LTE Cam S330, eufyCam S330 (eufyCam 3), eufyCam S4, and eufyCam C37); their smart lock solutions (including the Smart Lock E40,

FamiLock S3 Max, FamiLock S3, and Video Smart Lock S330); their video doorbell solutions (including the Video Doorbell E340, Video Doorbell C31, and Video Doorbell C30); their Bluetooth audio solutions (including the Soundcore Motion Boom, Soundcore 3, Soundcore 1, Soundcore Q20i, Soundcore Life Q35, Soundcore Life Q20, and Soundcore Life Q30); their wireless-enabled projector solutions (including the Nebula X1 4K Triple Laser Projector (D2351) and Nebula Mars 3 Air (D2325)); and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").

28. Defendants also instruct their customers, agents, employees, and affiliates regarding how to use the Accused Products.

29. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,209,876**

30. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count I, the "Accused Products" include Defendants' AI-powered smart home customer support systems, including, but not limited to, the **eufy Smart Home Support – AI Agent**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

31. The USPTO duly issued U.S. Patent No. 7,209,876 (hereinafter, the "'876 patent") on April 24, 2007, after full and fair examination of Application No. 10/293,743, which was filed on November 13, 2002. *See* '876 patent at p. 1.

32. IoT Innovations owns all substantial rights, interest, and title in and to the '876 patent,

including the sole and exclusive right to prosecute this action and enforce the ’876 patent against infringers and to collect damages for all relevant times.

33. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’876 patent.

34. The claims of the ’876 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of image management in a mobile network.

35. The written description of the ’876 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

36. Defendants have directly infringed the claims of the ’876 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’876 patent. Defendants, through the use and provision of the Accused Products and their associated hardware and software and functionalities, perform a method for producing answers to a question or query issued to an information repository containing natural language data, executable in a computer system, comprising the steps of receiving a search question or query containing at least one variable expression, said at least one variable expression being representative of desired answer data that is to be searched for in said information repository;

initiating a search of said information repository for information containing terms present in said search question or query and receiving a first data set comprising information containing terms present in said search question or query; searching said first data set for answer phrases present in syntactically similar form to said search question or query and containing answer data which may replace said variable expression to provide an answer to said search question or query, and retrieving answer phrases resulting from such search; and modifying said answer phrases and providing output derived from said answer phrases in the form of one or more direct answers to said search question or query. *See* **Figures 1-2**.

Built with Care.
eufy, a smart home brand by Anker Innovations, specializes in AI-driven smart living solutions. Since its launch in 2016, eufy has introduced a wide range of products, from robotic cleaners and home security systems to baby care and personal health devices.

**Figure 1**
Source: ANKER-IN.COM, https://www.anker-in.com/brands




**Figure 2**

Source: EUFY.COM, https://www.eufy.com/

37. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,346,340**

38. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count II, the "Accused Products" include Defendants' wireless LTE-enabled cameras, including, but not limited to, the **eufy 4G LTE Cam S330**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

39. The USPTO duly issued U.S. Patent No. 7,346,340 (hereinafter, the "'340 patent") on March 18, 2008, after full and fair examination of Application No. 11/170,100, which was filed on Jun. 30, 2005. *See* '340 patent at p. 1.

40. IoT Innovations owns all substantial rights, interest, and title in and to the '340 patent, including the sole and exclusive right to prosecute this action and enforce the '340 patent against infringers and to collect damages for all relevant times.

41. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '340 patent.

42. The claims of the '340 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve authentication and policy control for mobile devices roaming in visited networks.

43. The written description of the ’340 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

44. Defendants have directly infringed the claims of the ’340 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, claim 24 of the ’340 patent. Defendants, using the Accused Products and their associated hardware and software and functionalities, provide a user terminal for connection in a mobile communication system, the user terminal being configured to: authenticate into a visited network, wherein the visited network is distinct from a home network of the user terminal; receive an authentication success message from the visited network, wherein the authentication success message includes a user policy which is to be used by the user terminal in the visited network, and further wherein the user policy is based at least in part on a local policy of the visited network; and apply the user policy to uplink packets which are transmitted from the user terminal. By way of example, the Accused Product, the eufy 4G LTE Cam S330, is a wireless user terminal capable of communicating through an LTE cellular network. The product materials identify the S330 as a “4G LTE Cam” and expressly describe its connectivity as including 4G, with automatic switching between Wi-Fi and 4G connectivity. *See* **Figure 3**; https://www.eufy.com/products/t86p2121?variant=43152752083130 (eufy 4G LTE Cam S330). The LTE/EPC roaming standards and guidelines describe the operation of LTE devices and user equipment in mobile communication networks. Accordingly, the S330 constitutes a user terminal

configured for connection in an LTE mobile communication system.




**Figure 3**
Source: EUFY.COM, https://www.eufy.com/products/t86p2121

45. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

46. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendants' infringement of the '340 patent. Defendants' actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

47. Defendants had knowledge of the '340 patent at least as of the date when they were notified of the filing of this action.

48. Upon information and belief, Defendants have also indirectly infringed one or more claims of the '340 patent by inducing others to directly infringe said claims.

49. Defendants have induced end-users, including, but not limited to, Defendants' employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '340 patent by providing or requiring use of the Accused Products.

50. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '340 patent, including, for example, claim 24 of the '340 patent.

51. Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on how to use the Accused Products in an infringing manner.

52. Defendants are performing these steps, which constitute induced infringement with the knowledge of the '340 patent and with the knowledge that the induced acts constitute infringement.

53. Defendants are aware that the normal and customary use of the Accused Products by others would infringe the '340 patent.

54. Defendants' inducement is ongoing.

55. Upon information and belief, Defendants have also indirectly infringed by contributing to the infringement of the '340 patent.

56. Defendants have contributed to the direct infringement of the '340 patent by their personnel, contractors, and customers.

57. The Accused Products have special features that are specially designed to be used in

an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’340 patent, including, for example, claim 24 of the ’340 patent. The special features constitute a material part of the invention of one or more of the claims of the ’340 patent and are not staple articles of commerce suitable for substantial non-infringing use. In fact, the primary purpose of the Accused Products is to act and operate in a way that infringes the ’340 patent.

58. Defendants’ contributory infringement is ongoing.

59. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of IoT Innovations’ patent rights.

60. Defendants’ actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

61. Defendants’ direct infringement of one or more claims of the ’340 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations’ rights under the patent.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,593,428**

62. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count III, the “Accused Products” include Defendants’ wireless-enabled security cameras, outdoor cameras, projectors, and related devices, including, but not limited to, **the Anker Eufy Wall Light Cam S4, eufy Security Cameras (including the eufyCam S3 Pro 4 and eufyCam S4 + Indoor Cam S35)**, **eufy Outdoor Cameras (including the eufy Solar Wall Light Cam S120), Soundcore Outdoor and Portable Projectors (including the Soundcore Nebula X1 and Mars 3 Air projectors)**, **and other wireless-enabled devices that support IEEE 802.11 communication**, and any other

devices and hardware, software, and functionality that comprise substantially similar functionality.

63. The USPTO duly issued U.S. Patent No. 7,593,428 (hereinafter, the "'428 patent") on September 22, 2009, after full and fair examination of Application No. 11/621,545 which was filed on January 9, 2007. *See* '428 patent at p. 1.

64. IoT Innovations owns all substantial rights, interest, and title in and to the '428 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

65. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '428 patent.

66. The claims of the '428 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function, operation, and security of data communications by selectively providing extended checksum protection to data packets communicated between communication stations, enabling more reliable and secure transmission of data across networks.

67. The written description of the '428 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

68. Defendants have directly infringed the claims of the '428 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendants have directly

infringed and continue to infringe, either literally or under the doctrine of equivalents, claim 14 of the ’428 patent. Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method comprising: receiving data from a data source at a transceiver station; and in response to programmed instructions in processing circuitry at the transceiver station; selecting a first portion of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum; performing a first checksum calculation upon the selected first portion and performing at least a second checksum calculation upon the selected second portion; and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation. *See* https://www.eufy.com/products/t86c1121?variant=46270175346874 (eufy Wall Light Cam S4); https://www.eufy.com/products/bundle-t88941w1-1-t80301d1-85-1?variant=44225472954554 (eufyCam S3 Pro 4-Cam Kit + 1 TB Hard Drive); https://www.eufy.com/products/t88711w1?variant=41849860718778 (eufyCam S330 (eufyCam 3)); https://www.eufy.com/products/bundle-t81721w1-1-t8416121-1?variant=45447751565498 (eufyCam S4 + Indoor Cam S350); https://www.eufy.com/products/t81a0111?variant=42226057969850 (Solar Wall Light Cam S120); https://www.soundcore.com/products/d2351-nebula-x1-4k-triple-laser-projector?variant=45548875022526 (soundcore Nebula X1 | 4K Triple Laser Projector with Micro Gimbal); https://www.soundcore.com/eu/products/mars-3-air-projectors-d2325?ref=mars-series (Mars 3 Air | Portable Google TV Projector); https://service.soundcore.com/article-description/Nebula-Mars-3-Air-USER-GUIDE--D2325 (Mars 3 Air).

69. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,974,260**

70. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count IV, the "Accused Products" include Defendants' Bluetooth-enabled speakers, including, but not limited to, **the Soundcore devices such as Soundcore Motion Boom, Soundcore 3, Soundcore 1, Q20i, Life Q35, Life Q20, and Life Q30 that support Bluetooth 5.0 communication**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

71. The USPTO duly issued U.S. Patent No. 7,974,260 (the "'260 patent") on July 5, 2011, after full and fair examination of Application No. 10/489,269, which was filed on September 10, 2001. *See* '260 patent at 1. A Certificate of Correction was issued on November 29, 2011. *See id.* at 17.

72. IoT Innovations owns all substantial rights, interest, and title in and to the '260 patent, including the sole and exclusive right to prosecute this action and enforce the '260 patent against infringers and to collect damages for all relevant times.

73. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '260 patent.

74. The claims of the '260 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include

inventive components that improve upon the function and operation of timing controls among devices in a wireless network setting.

75. The written description of the ’260 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

76. Defendants have directly infringed one or more claims of the ’260 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

77. As just one example, Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, claim 5 of the ’260 patent. Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method of transmitting timing control information from a first device to a second device in a communication network, the method comprising: defining a data sequence at a first device, the data sequence including a header portion and a payload portion, wherein the header portion includes an address code of a second device and the payload portion includes timing control information for communicating packets between devices in a communication network wherein the timing control information defines when the second device communicates, wherein the address code is a first active member address of the second device, and wherein the first active member address and a second active member address are assigned to the second device; and transmitting the defined data sequence in a data communication packet from the first device to the second device in a time defined contact slot. *See* https://www.soundcore.com/products/motion-

boom?variant=40612240490686 (soundcore Motion Boom | Outdoor Bluetooth Speaker); https://www.soundcore.com/products/a3117011?ref=speakers (soundcore 3 | Bluetooth Speaker with Stereo Sound); https://www.soundcore.com/products/soundcore-1?ref=speakers (soundcore 1); https://www.soundcore.com/products/q20i-a3004z31?variant=46396740829374 (Q20i | Hybrid Active Noise Cancelling Headphones); https://www.soundcore.com/products/a3352011?variant=46379431559358 (Anker Soundsync Bluetooth Receiver for Music Streaming with Bluetooth 5.0); https://www.soundcore.com/products/a3027012?variant=41149233430718 (Life Q35).

78. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,972,576

79. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count V, the "Accused Products" include Defendants' home security systems and smart-home devices, including, but not limited to, **the eufy Security smart home ecosystem (including HomeBase S380 devices, the eufy Security App, and the eufy Entry Sensor E20), HomeBase Professional S1, Water and Freeze Sensor, Flood and Freeze Sensor, Entry Sensor, Smoke Alarm E10, Motion Sensor, SoloCam S340, SoloCam S220, Indoor Cam S350, Indoor Cam E30, Indoor Cam E220, 4G LTE Cam S330, eufyCam S330 (eufyCam 3), eufyCam S4, eufyCam C37, Smart Lock E40, FamiLock S3 Max, FamiLock S3, Video Smart Lock S330, Panic Button E10, KeyPad E10, Indoor Siren E20, Key Fob E10, Video Doorbell E340, Video Doorbell C31, and Video Doorbell C30**, and

any other devices and hardware, software, and functionality that comprise substantially similar functionality.

80. The USPTO duly issued U.S. Patent No. 8,972,576 (hereinafter, the "'576 patent") on March 3, 2015 after full and fair examination of Application No. 10/833,381 which was filed on April 28, 2004. *See* '576 patent at p. 1.

81. IoT Innovations owns all substantial rights, interest, and title in and to the '576 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

82. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '576 patent.

83. The written description of the '576 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

84. The claims of the '576 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security of communications devices and networks by employing an improved network protocol that enables the establishment of a known, persistent relationship between a mobile wireless device and a wireless network that allows the device to communicate over the network absent further configuration once the relationship has been established.

85. Defendants have directly infringed the claims of the ’576 patent by using, providing, supplying, or distributing the Accused Products.

86. As just one example, Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’576 patent. Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method for establishing a relationship between a mobile device and a server in a network, comprising; (a) detecting the presence of the mobile device; (b) in response to determining that the mobile device is unrecognized, automatically notifying a network administrator; (c) in response to receiving authorization from the network administrator to establish the relationship, requesting authorization from the mobile device to authorize the establishment of the relationship; and (d) establishing the relationship between the mobile device and the network in response to receiving the authorization from the mobile device, such that no additional configuration is required by the mobile device to communicate over the network once the relationship has been established. *See* https://www.eufy.com/security-hub (eufy Security Hub / HomeBase S380); https://www.eufy.com/products/t90e0121?variant=44961775911098 (eufy Entry Sensor E20); https://www.eufy.com/products/t9000121?variant=44988282110138 (HomeBase Professional S1); https://www.eufy.com/products/t89200d1?variant=42863746252986 (Water and Freeze Sensor); https://www.eufy.com/products/t90f0121?variant=44974481637562 (Flood and Freeze Sensor); https://www.eufy.com/products/t89000d4?variant=37765848498362 (Entry Sensor); https://www.eufy.com/products/t90s0121?variant=44974456275130 (Smoke Alarm E10); https://www.eufy.com/products/t8910021?variant=37765865963706 (Motion Sensor / SoloCam S340); https://www.eufy.com/products/t81701w1?ref=eufy-flex&variant=42628415815866 (SoloCam S220); https://www.eufy.com/products/t8134121?ref=eufy-

flex&variant=42389580873914 (Indoor Cam S350); https://www.eufy.com/products/t8416121?variant=42628959043770 (Indoor Cam E30); https://www.eufy.com/products/t8417121?ref=indoor-security-camera&variant=44434340446394 (Indoor Cam E220); https://www.eufy.com/products/t8410121?ref=indoor-security-camera&variant=37765865570490 (Indoor Cam); https://www.eufy.com/products/t86p2121?Series=S&fliter_category=t86p2121&ref=outdoor-security-cameras&variant=43152752083130 (4G LTE Cam S330); https://www.eufy.com/products/t81601w1?Series=S&fliter_category=t81601w1&ref=outdoor-security-cameras&variant=41871171649722 (eufyCam S330 / eufyCam 3); https://www.eufy.com/products/t8134121?Series=S&fliter_category=t8134121&ref=outdoor-security-cameras&variant=42389580873914 (eufyCam S4); https://www.eufy.com/products/t81721w1?Series=S&fliter_category=t81721w1&ref=outdoor-security-cameras&variant=45120250413242 (eufyCam C37); https://www.eufy.com/products/t814x121?variant=45756696592570 (Smart Lock E40); https://www.eufy.com/collections/smart-lock?ref=Smart%20Locks_viewmore (Smart Locks collection — FamiLock S3 Max, FamiLock S3, Video Smart Lock S330); https://www.eufy.com/products/bundle-t90p0121-2?ref=alarm-system&fliter_category=bundle-t90p0121-2&variant=45492882079930 (Panic Button E10 / alarm system bundle); https://www.eufy.com/products/t8960021-76?ref=alarm-system&fliter_category=t8960021-76&variant=44974550778042 (KeyPad E10); https://www.eufy.com/products/bundle-t90r0121-3?ref=alarm-system&fliter_category=bundle-t90r0121-3&variant=45492892041402 (Indoor Siren E20 / alarm system bundle); https://www.eufy.com/products/t90m0121?ref=alarm-

system&fliter_category=t90m0121&variant44974349746362 (Key Fob E10); https://www.eufy.com/products/t90k0121?ref=alarm-system&fliter_category=t90k0121&variant=44974504509626 (alarm system accessory); https://www.eufy.com/products/t90p0121?ref=alarm-system&fliter_category=t90p0121&variant=44974532362426 (alarm system accessory); https://www.eufy.com/products/t8214111?ref=video-doorbell&fliter_category=t8214111&variant=42629004067002 (Video Doorbell E340); https://www.eufy.com/products/t8223111?ref=video-doorbell&fliter_category=t8223111&variant=44298886676666 (Video Doorbell C31); https://www.eufy.com/products/t8224111?ref=video-doorbell&fliter_category=t8224111&variant=44298879205562 (Video Doorbell C30).

87. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 9,008,055

88. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count VI, the "Accused Products" include Defendants' home security systems and smart-home devices, including, but not limited to, **the eufy Security system (including the eufy Security mobile application, HomeBase, and HomeBase-connected sensors), HomeBase Professional S1, Water and Freeze Sensor, Flood and Freeze Sensor, Entry Sensor, Smoke Alarm E10, Motion Sensor, SoloCam S340, SoloCam S220, Indoor Cam S350, Indoor Cam E30, Indoor Cam E220, 4G LTE Cam S330,**

**eufyCam S330 (eufyCam 3), eufyCam S4, eufyCam C37, Smart Lock E40, FamiLock S3 Max, FamiLock S3, Video Smart Lock S330, Panic Button E10, KeyPad E10, Indoor Siren E20, Key Fob E10, Video Doorbell E340, Video Doorbell C31, and Video Doorbell C30**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

89. The USPTO duly issued U.S. Patent No. 9,008,055 (hereinafter, the "'055 patent") on April 14, 2015 after full and fair examination of Application No. 10/903,931 which was filed on July 29, 2004. *See* '055 patent at p. 1.

90. IoT Innovations owns all substantial rights, interest, and title in and to the '055 patent, including the sole and exclusive right to prosecute this action and enforce the '055 patent against infringers and to collect damages for all relevant times.

91. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '055 patent.

92. The claims of the '055 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security communications devices and networks by using services that are automatically employed once there is an established relationship between a device and a home network.

93. The written description of the '055 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of

the invention.

94. Defendants have directly infringed the claims of the ’055 patent by using, providing, supplying, or distributing the Accused Products.

95. As just one example, Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’055 patent. Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method for automatically providing remote services for a mobile device having an established relationship with a server of a home network, comprising: receiving, by the server, information that was stored in the mobile device when the established relationship was established when the mobile device establishes an Internet connection through a local network that is separate and remote from the home network, wherein establishing the established relationship includes allowing the user to set preferences that identifies at least one service that is automatically performed between the mobile device and the server when a connection is made; and if the mobile device is recognized through the received information, automatically activating at least one function within the server to initiate a transfer of data between the mobile device and the server through the local network. *See* https://www.eufy.com/security-hub (eufy Security Hub / HomeBase); https://www.eufy.com/products/t9000121?variant=44988282110138 (HomeBase Professional S1); https://www.eufy.com/products/t89200d1?variant=42863746252986&ref=homepage_bestprice1 (Water and Freeze Sensor); https://www.eufy.com/products/t90f0121?variant=44974481637562&ref=homepage_bestprice3 (Flood and Freeze Sensor); https://www.eufy.com/products/t89000d4?variant=37765848498362&ref=homepage_bestprice4

(Entry Sensor); https://www.eufy.com/products/t90s0121?variant=44974456275130&ref=homepage_bestprice2 (Smoke Alarm E10); https://www.eufy.com/products/t8910021?variant=37765865963706&ref=homepage_bestprice5 (Motion Sensor / SoloCam S340); https://www.eufy.com/products/t81701w1?ref=eufy-flex&variant=42628415815866 (SoloCam S220); https://www.eufy.com/products/t8134121?ref=eufy-flex&variant=42389580873914 (Indoor Cam S350); https://www.eufy.com/products/t8416121?variant=42628959043770 (Indoor Cam E30); https://www.eufy.com/products/t8417121?ref=indoor-security-camera&variant=44434340446394 (Indoor Cam E220); https://www.eufy.com/products/t8410121?ref=indoor-security-camera&variant=37765865570490 (Indoor Cam); https://www.eufy.com/products/t86p2121?Series=S&fliter_category=t86p2121&ref=outdoor-security-cameras&variant=43152752083130 (4G LTE Cam S330); https://www.eufy.com/products/t81601w1?Series=S&fliter_category=t81601w1&ref=outdoor-security-cameras&variant=41871171649722 (eufyCam S330 / eufyCam 3); https://www.eufy.com/products/t8134121?Series=S&fliter_category=t8134121&ref=outdoor-security-cameras&variant=42389580873914 (eufyCam S4); https://www.eufy.com/products/t81721w1?Series=S&fliter_category=t81721w1&ref=outdoor-security-cameras&variant=45120250413242 (eufyCam C37); https://www.eufy.com/products/t814x121?variant=45756696592570 (Smart Lock E40); https://www.eufy.com/collections/smart-lock?ref=Smart%20Locks_viewmore (Smart Locks collection — FamiLock S3 Max, FamiLock S3, Video Smart Lock S330);

https://www.eufy.com/products/bundle-t90p0121-2?ref=alarm-system&fliter_category=bundle-t90p0121-2&variant=45492882079930 (Panic Button E10 / alarm system bundle); https://www.eufy.com/products/t8960021-76?ref=alarm-system&fliter_category=t8960021-76&variant=44974550778042 (KeyPad E10); https://www.eufy.com/products/bundle-t90r0121-3?ref=alarm-system&fliter_category=bundle-t90r0121-3&variant=45492892041402 (Indoor Siren E20 / alarm system bundle); https://www.eufy.com/products/t90m0121?ref=alarm-system&fliter_category=t90m0121&variant=44974349746362 (Key Fob E10); https://www.eufy.com/products/t90k0121?ref=alarm-system&fliter_category=t90k0121&variant=44974504509626 (alarm system accessory); https://www.eufy.com/products/t90p0121?ref=alarm-system&fliter_category=t90p0121&variant=44974532362426 (alarm system accessory); https://www.eufy.com/products/t8214111?ref=video-doorbell&fliter_category=t8214111&variant=42629004067002 (Video Doorbell E340); https://www.eufy.com/products/t8223111?ref=video-doorbell&fliter_category=t8223111&variant=44298886676666 (Video Doorbell C31); https://www.eufy.com/products/t8224111?ref=video-doorbell&fliter_category=t8224111&variant=44298879205562 (Video Doorbell C30).

96. By way of example, within the eufy Security system, a user creates or logs into a eufy Security account and adds HomeBase through the eufy Security App, thereby associating the user's mobile device with HomeBase. HomeBase provides centralized connectivity for the user's eufy security devices and sensors, while the eufy Security App enables the user to remotely monitor the home and receive alerts. The eufy Security system allows users to access their eufy Security products from anywhere in the world, and the App provides an Away Mode in which

sensors are activated and the home is fully monitored. When a connected sensor or device is triggered, HomeBase can ring an alarm or send an alert notification to the user's mobile device through the eufy Security App. Accordingly, the eufy Security App constitutes the claimed mobile device, HomeBase constitutes the claimed server of the home network, and the remote monitoring and automatic delivery of sensor-triggered alerts to the mobile device constitute the claimed remote services.

97. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

98. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendants' infringement of the '055 patent. Defendants' actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

99. Defendants had knowledge of the '055 patent at least as of the date when they were notified of the filing of this action.

100. Upon information and belief, Defendants have also indirectly infringed one or more claims of the '055 patent by inducing others to directly infringe said claims.

101. Defendants have induced end-users, including, but not limited to, Defendants' employees, partners, or contractors, to directly infringe, either literally or under the doctrine of

equivalents, the ’055 patent by providing or requiring use of the Accused Products.

102. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’055 patent, including, for example, claim 1 of the ’055 patent.

103. Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on how to use the Accused Products in an infringing manner.

104. Defendants are performing these steps, which constitute induced infringement with the knowledge of the ’055 patent and with the knowledge that the induced acts constitute infringement.

105. Defendants are aware that the normal and customary use of the Accused Products by others would infringe the ’055 patent.

106. Defendants’ inducement is ongoing.

107. Upon information and belief, Defendants have also indirectly infringed by contributing to the infringement of the ’055 patent.

108. Defendants have contributed to the direct infringement of the ’055 patent by their personnel, contractors, and customers.

109. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’055 patent, including, for example, claim 1 of the ’055 patent. The special features

constitute a material part of the invention of one or more of the claims of the ’055 patent and are not staple articles of commerce suitable for substantial non-infringing use. In fact, the primary purpose of the Accused Products is to act and operate in a way that infringes the ’055 patent.

110. Defendants’ contributory infringement is ongoing.

111. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of IoT Innovations’ patent rights.

112. Defendants’ actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

113. Defendants’ direct infringement of one or more claims of the ’055 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations’ rights under the patent.

**JURY DEMAND**

114. IoT Innovations hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

115. IoT Innovations requests that the Court find in its favor and against Defendants, and that the Court grant IoT Innovations the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or others acting in concert therewith;

b. A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the ’340 patent and the ’055 patent;

or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c. Judgment that Defendants account for and pay to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendants' infringing activities and other conduct complained of herein;

d. Judgment that Defendants' infringements be found willful as to the '340 patent and the '055 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: August 26, 2026

Respectfully submitted,

*/s/ C. Matthew Rozier*

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

***Attorneys for Plaintiff IOT INNOVATIONS LLC***

* admitted to the Eastern District of Texas